1  Kamal Morsy Ismaiel
   A# 43-103-167
2  U.S. Department of Homeland Security
   El Centro Processing Center
3  1115 North Imperial Avenue
   El Centro, CA 92243
4



UNITED STATES DISTRICT COURT
FOR
THE SOUTHERN DISTRICT OF CALIFORNIA

KAMAL MORSY ISMAIEL

[A# 43-103-167]

Petitioner,

Vs.

MICHAEL CHERTOFF, SECRETARY
OF THE DEPARTMENT OF HOMELAND
SECURITY, MICHAEL MUKASEY,
ATTORNEY GENERAL, ROBERT CULLEY,
DEPUTY FIELD OFFICE DIRECTOR, SAN
DIEGO / CALIFORNIA, U.S IMMIGRATION
AND CUSTOM ENFORCEMENT, ROBERT G.
RILLAMAS- OFFICER – IN – CHARGE,

Respondents,

CIVIL ACTION NO:

'07 CV 2359 DMS POR

STATEMENT OF FACTS AND
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PETITIONER'S MOTION

The Petitioner has been ordered removed from the United States by the respondents. However, because he cannot be removed in the reasonably foreseeable future, petitioner been

held by respondents, based on their misconstrual of their statutory authority to detain non-removable aliens indefinitely under 8 U.S.C. § 1231(a)(6).

Petitioner was born in Egypt, he inters the United States legally in or about 1977, and never left since. Petitioner was charged with Grand Theft and was sentenced to (90) days to county jail, he never serve a day in county jail, instead he was sentenced to work furlough for (54) days and was placed on probation. Petitioner violated his probation for not showing to his probation appointment, and was sentenced to (14) months to state prison, he served only 6 months, on July 13, 2006, he was paroled from state prison and was picked and held by DHS and was placed on removal proceedings. The IJ found Petitioner ineligible for any kind of relief and ordered him to be removed to Egypt due to his criminal conviction. On September 21, 2006, Petitioner appealed the IJ decision to the Board of Immigration Appeals (BIA), the BIA dismissed his appeals on January 29, 2007, then Petitioner filed a petition to review the BIS decision to the Court of Appeals for the Ninth Circuit .

Petitioner has ($00.00) in his account at the El Centro Processing Center (ECPC). See prison Certificate, Form CIV-67, attached to this motion to precede *In Forma Pauperis* accompanying this petition. Since he is in custody, he does not have a source of income or employment. As result, he cannot afford to retain counsel.

Additionally, has had limited formal education or training in the United States, petitioner requests this Court appoint the federal defenders of San Diego, Inc., to represent him in the instant habeas action.

## II.

## ARGUMENT

## THIS COURT SHOULD APOINT COUNSEL FOR THE PETITIONER.

Habeas Corpus proceedings "are of fundamental importance… in our constitutional scheme because they directly protect our most valued rights." <u>Brown v. Vasquez,</u> 952 F.2d 1164, 1169 (9th Cir. 1991) (<u>quoting</u> <u>Bonds v. Smith,</u> 430 U.S. 817, 827 (1977)) ( citing and internal quotations omitted). Consequently, federal law permits a district court to appoint counsel in habeas proceeding under 28 U.S.C. § 2241 when the "interests of justice so require," in a

petitioner has shown that he is unable to afford an attorney. 18 U.S.C. § 3006 A (a)(2)(B). To make this decision, this Court must "evaluate[1] the likelihood of success on the merits as well as [2] the ability of petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983): **accord Rand v. Rowland,** 113 F.3d 1520, 1525 (9th Cir. 1997).

As is indicated below, the petitioner is highly likely to succeed on the merits of this claim, but will be unable to effectively articulate his claims through a pro se action, in light of his limited educational background. The petitioner cannot otherwise afford to retain counsel for the litigation of his petition for writ of habeas corpus under 28 U.S.C. § 2241. Thus, the appointment of counsel is appropriate.[1]

A. **The Petitioner is Highly Likely to Succeed on the merits of his Claim.**

IN **Tijani v. Willis**, 430 F.3d 1241 (9th Cir. 2005), the Court reviewed a § 2241 habeas petition before judge Hayes by deportee who had been held in custody for 32 months awaiting the outcome of his Appeals. Distinguishing **Demore v. Kim**, 538 U.S. 510 (2003), because **Tijani** did not concede he was deportable, the Court ordered his release unless he was provided with a bail hearing and found unsuitable for release under the usual factors of risk of flight or danger to the community. Id. at 1242.

In his concurring opinion, judge Tashima expanded on the reasoning underlying the decision in order to provide guidance to the courts. Id. at 1243 (Tashima, J., concurring). Judge Tashima saw the heart of the case to be a problematic decision, **In re Joseph,** 22 I. & N. Dec. 799 (BIA 1999), which he stated erroneously treated 8 U.S.C. § 1226 (C) as permitting indefinite detention. Id. at 1243-44. Rather, **Zadvydas** made it clear that "[w]hen such a fundamental right

---

[1] In identical habeas corpus proceedings, the Honorable Roger T. Benitez of the United States District Court for the Southern District of California has appointed the Federal Defenders of San Diego, Inc. as counsel of record for a similarly-situated petitioner. Casas-Castrilln v. Department of Homeland Security. Case No. 05-CV1552-Ben (NLS) (S.D. Cal. Jan.31, 2006). Likewise, the Honorable Irma E. Gonzalez appointed counsel in Hanna v. I.N.S. Case No. 01CV0382-IEG (JFS) (S.D. Cal. Apr.26, 2001). The Honorable Napoleon A. Jones has appointed the Federal Defenders of San Diego, Inc., based upon the petitioners' financial eligibility, their likelihood of success on the merits of the habeas petition, the complexity of the legal issues involved in the habeas action, the petitioners' lack of education and limited proficiency in English, and the need for assistance in obtaining discovery from federal immigration officials. See Chaydy v. I.N.S. Case No. 00CV1687-J (JAH) (S.D. Cal. Sept. 1, 2000). Other judges in the United States District Court for the Southern District of California have made similar appointments See Aphayavong v. I.N.S, Case No. 00CV0804-J (LAB) (S.D. Cal. June 22, 2000); See also Gebru v. I.N.S . Case No. 01CV0625-JM (POR) (S.D. Cal. Jul. 11, 2001) Sahagian v. I.N.S, Case No. 01CV066-BTM (RBB)(S.D. Ca. May 18, 2001); Cao v. I.N.S. Case No. 00CV1991-L (JAH) (S.D. Cal. Oct. 10, 2000).

[as personal liberty] is at stake, the Supreme Court has insisted on heightened procedural protections to guard against the erroneous deprivation of the right." Id. at 1244. The natural limitation on authority to detain, in Judge Tashima's view, is "[o]nly those immigrants who could not raise a 'substantial' argument against their removability should be subject to mandatory detention. Id. at 1247. Such a standard "strikes the best balance between the alien's liberty interest and the government's interest in regulating immigration." Id. Because **Tijani** had a potentially meritorious claim that his conviction was not a categorical crime of removal turpitude, he made a showing of a "substantial argument" which would warrant release on appeal. Id. at 1247-48. Conversely, those detainees who cannot raise a substantial argument against their deportation have an incentive to flee if not detained, so release is not appropriate. Id. at 1247. Noting the perverse penalizing effect of detention for those who have the best reasons to stay and fight, Judge Tashima observed, "By subjecting immigrants who, like **Tijani**, raise difficult questions of law in their removal proceedings to detention while those proceedings are conducted, the Joseph standard forces those immigrants to endure precisely who **Tijani** has endured: detention that lasts for a prolonged period of months or years." Id. at 1246.

Similarly, In **Nadarajah v. Gonzales**, 443 F. 3d 1069 (9th Cir. 2006), a case brought before Judge Burns, the Court considered an indefinite detainee held under suspicion of terrorist affiliation. **Nadajarah** was seeking to challenge his detention and to support his claim for asylum, but the government relied on the silence of the asylum detention statute to detain Nadajarah while his litigation proceeded. Id. at 1076-78. However, the Court of Appeals held that the asylum detention statute was equally subject to the strictures of **Zadvydas**. Id. at 1082. Moreover, the Court held the principles of Fed. R. App. Proc. 23(b) allowing release on bail pending appeals apply to such immigration detentions. Id. at 1083. The usual standards operate in such cases: (1) probability of success on merits and irreparable harm; or (2) serious legal question and a balance of the hardships. Id. Moreover, the probability of success correspondingly lessens at the length of detention increases Id. 1083-84. In **Nadarajah**, the Court found the 52 months of detention were great hardship that accordingly reduced the required showing of likelihood of success.

Petitioner's case compares favorably in the fact situation in **Tijani** and **Nadarajah**, and therefore he is equally entitled to consideration for release. Like **Tijani**, petitioner can raise his

1  argument for release through the vehicle of a § 2241 petition, and he too can point to substantial
2  arguments regarding both his predicate criminal conviction and the deportation proceeding.
3        Petitioner has raised three substantive arguments attacking these predicate proceedings.
4  First, he has argued that he was not subject to the "stop-time" rule, which deprived him of the
5  ability to seek relief from removal. This is because his criminal conviction for Grand Theft was
6  not categorical crimes of an aggravated felony because petitioner was never sentenced to over a
7  year in county jail, and in the plea agreement, was mentioned that the sentenced could be
8  reduced later to 17 (b). Petitioner in process to vacate his criminal conviction under petition of
9  erroe coram nobis P.C § 1016.5 . If it is not an aggravated felony, then it did not stop time for
10 petitioner to accrue continuous residence, allowing him to apply for discretionary relief under 8
11 U.S.C § 1229 b (d)(1). Nor would it count as bases for deportation under 8 U.S.C. §
12 1227(a)(2)(A)(ii). Second, petitioner has argued that he was never provided with interpreter
13 during the criminal trial which is violation to his due process and also he was never informed of
14 the immigration consequences of his guilty pleas in the underlying criminal cases. Under
15 California Law, this is ground of vacating his guilty plea and overturning his conviction. See Cal
16 Penal Code § 1016.5 (imposing statutory duty upon judiciary to warn aliens about immigration
17 consequences of guilty plea); **People v. Gontiz**, 58 Cal. App. 4th 1309 (1997) (court must inform
18 defendant of all immigration consequences as required by statute); **People v. Soriano**, 194 Ca.
19 App. 3d. 1470 (1987) (allowing defendant to withdraw guilty plea for failure to advise of
20 immigration consequences). Third, petitioner was deprived of effective assistance of counsel and
21 the right to obtain an interceptor during substantial and a critical portion of his criminal
22 proceedings. Any one of these claims would count as a "substantial question" under the Tashima
23 analysis in **Tijani**; together, they show petitioner has reasonable basis for his legal challenges.
24 As Judge Tashima observed, the detainee need not show certainty of outcome to gain release,
25 just that "a closer look is surely required." **Tijani**, 430 F.3d at 1248 (Tashima, J., concurring).
26       Also in **Nadarajah**, petitioner here can demonstrate a basis for release under the factors
27 in Fed. R. App. P. 23(b). He raises three substantive and complex legal questions. His continued
28 loss of personal liberty in itself constitutes irreparable harm. As for the balance of hardship,
   whereas the Court in **Nadarajah** found that 52 months detention was very burdensome detention
   which correspondingly lessened the required showing of likely success on appeal, petitioner here

has been in custody since January 5, 2006, and in respondents custody since July 13, 2006. His burden of probable success, too, must be significantly lessened.

Balancing the factors identified in case law for release of detainees while legal challenges are pending, petitioner is entitled to release at least as much as petitioners in **Tijani** and **Nadarajah**.

The petitioner has been detained in the custody of respondents in his current detention since July 13, 2006. The petitioner's detention beyond the presumptively reasonable detention period announced in **Zavydas** violates § 1231(a)(6), because it is not significantly likely that petitioner can be removed to Egypt in the reasonably foreseeable future. **See Zavydas**, 533 U.S. at 700; **See also Ma,** 257 F.3d at 1112 (holding that section 1231 mandates the release of deportable aliens "at the end of presumptively reasonable detention period" when "there is no repatriation agreement and no demonstration of a reasonable likelihood that one will be entered into in the near future"). Since there is no evidence that petitioner will indeed be returned to Egypt in the reasonably foreseeable future, he is highly likely to succeed on the merits of his habeas petition. This circumstance, in conjunction with the following elements the need for the appointment of counsel.

**B. The Petitioner Cannot Adequately Articulate his Claims in the Absence of Counsel, in the light of the Complexity of the Legal Issues Involved in His Petition for habeas Relief.**

To weigh the petitioner's ability to articulate his claims in the absence of counsel, a court must measure "the [petitioner]'s ability to articulate his claims against the relative complexity of the matter." **Rand,** 113 F.3d at 1525. In addition, counsel may be appointed during federal habeas proceedings if the appointment of an attorney is "necessary for the effective utilization of discovery procedure,… [or] if an evidentiary hearing is required." **Weygand,** 718 F.2d at 954.

As is indicated above, the instant case involves complex legal issues grounded in constitutional law, statutory interpretation, principles of jurisdiction, and administrative procedure. While the Supreme Court's opinion in **Zadvydas** has clarified many legal issues remain unresolved, including the determination of acceptable conditions of Supervision or release. Moreover, the fact that petitioner have not demonstrated full compliance with **Zadvydas** mandate, as of the date of this motion, indicates that this litigation still necessary.

Since the petitioner is in the custody of federal immigration officials, an analysis of immigration law is required. The Ninth Circuit has declared that "'[w]ith only small degree of hyperbole, the immigration laws have been deemed second only to the Internal Revenue Code in complexity.'" **United States v. Ahumada-Aguilar,** 295 F.3d 943, 950 (9th Cir. 2002) (citations and internal quotations omitted). In most cases involving an immigration law, "[a] lawyer is often the only person who could thread the labyrinth." Id. The absence of counsel during immigration proceedings will be prejudicial when an attorney could have assisted a litigant in seeking relief under applicable immigration laws, statutes, and cases. Id. at 951-52 ( prohibiting the use of deportation order during a subsequent prosecution for illegal re-entry because the absence of counsel affected the alien's ability to ascertain his eligibility for waiver of deportation, the viability of claim of United States citizenship, and his ability to obtain "special permission" to return to the United States after his deportation).

The petitioner's lack of expertise in legal issues warrants the appointment of counsel. The petitioner arrived in the United States 30 years ago. He never attended school in the U.S. The absence of any formal legal background or training poses an obstacle to the petitioner's understanding of the issues involved in the instant proceedings, and warrants the appointment of counsel to help him obtain the relief requested in his habeas petition. Moreover, petitioner does not read English good, and has limited oral proficiency.

Additionally, the appointment of counsel may be appropriate during federal habeas proceedings if it is "necessary for the effective utilization of discovery procedure…[or] if an evidentiary hearing is required." **Weygand,** 718 F.2d at 954. The respondents have information and documents relevant to the petitioner's habeas petition, including information relating to his criminal history, his bail or parole history, his institutional history, the content of communications between federal immigration officials and the embassy of petitioner's native country, and other documents relating to his detention by the Bureau of immigration and Custom Enforcement.

The petitioner cannot effectively pursue and obtain discovery from respondents that he will need to adequately present his claims without the assistance of counsel, in light of his limited education and lack of familiarity with the legal procedures involved in requesting and obtaining discovery. Moreover, the petitioner cannot adequately review and evaluate his alien registrations file (hereinafter "A-file") or evaluate relevant discovery regarding the likelihood of

his removal from the United States without the aid of counsel. The need for discovery, too, suggests the need for appointment of the Federal Defenders of San Diego, Inc. in the instant matter.

C. **The Potential Need for an Evidentiary Hearing Warrants the Appointment of Counsel.**

The Government must proffer evidence "sufficient to rebut [the] showing by deportable alien that "good reason [exists] to believe that there is no significant likelihood of removal in the reasonably foreseeable future." **Zadvydas,** 533 U.S. at 701. Since the Government is required to present evidence to rebut the petitioner's contention that his removal to Egypt is not likely in the reasonably foreseeable future, an evidentiary hearing may be necessary to litigate disputed issues of fact. **See Lawson v. Borg,** 60 F.3d 608, 611 (9th Cir. 1995)(requiring an evidentiary hearing to litigate contested issues of fact during federal habeas proceedings); **see also Weygandt,** 718 F.2d at 954 (noting that the appointment of counsel may be appropriate during federal habeas proceedings "if an evidentiary is required"). The petitioner lacks a sufficient legal background to advocate for himself during a contested motion hearing. The appointment of counsel is necessary to ensure that petitioner's rights are adequately protected in contested habeas proceedings.

D. **The Prison Litigation Reform Act, 28 U.S.C. § 1915, Does Not Require the Petitioner to Pay Filing Fees to Proceed with his Request for Federal Habeas Relief.**

The prison litigation Reform Act (PLRA), 28 U.S.C. § 1915, ordinarily requires a prisoner who "bring civil action or files an appeal *in forma pauperis*" to "pay the full amount of a filing fee" and to cover subsequent court fee incurred during the litigation of the inmate's claim. 28 U.S.C.§ 1915(b). **In Naddi v. Hill,** however, the Ninth Circuit concluded that "[a] review of the language and intent of the PLRA reveals the Congress was focused on prisoner civil rights and conditions cases, and did not intend to include habeas proceedings in the scope of the Act." 106 F.3d 275, 277 (9th Cir. 1997). Consequently, the Ninth Circuit declined to apply the *in forma pauperis* provisions of the PLRA to habeas petitioners, and to thereby require habeas petitioners to pay full filing fees and court costs.

Kamal Morsy Ismaiel A# 43-103-167                              {PAGE }

The petitioner in the instant case is filing a petition for writ of habeas corpus under 28 U.S.C § 2241, along with the instant motion. Therefore, this court cannot dismiss his petition for relief, or otherwise penalize the petitioner, of his failure to pay the full amount of filing fees specified in 28 U.S.C § 1915.

## CONCLUSION

For the foregoing reasons, the petitioner respectfully requests that this court grant the motion for appointment of counsel in this habeas corpus action.

Respectfully submitted,

November 24, 2007

*/s/ Kamal M. Ismaiel*

KAMAL MORSY ISMAIEL

Kamal Morsy Ismaiel A# 43-103-167              {PAGE }  9